MAYER·BROWN

Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel +1 202 263 3000
Main Fax +1 202 263 3300
www.mayerbrown.com

Archis A. Parasharami
Direct Tel +1 202 263 3328
Direct Fax +1 202 263 5328
aparasharami@mayerbrown.com

June 16, 2017

**VIA ECF**

The Honorable Joan M. Azrack
United States District Court for the
 Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

> Re: *Krafczek v. Cablevision Systems Corp. et al.*,
>  No. 2:17-cv-02915-JMA-SIL
>  **Pre-motion conference letter on proposed
>  motion to compel arbitration**

Dear Judge Azrack:

We represent defendants Cablevision Systems Corporation and Neptune Holdings US Corporation (now known as Altice USA, Inc.) (collectively, "Cablevision"). Pursuant to Your Honor's Individual Motion Practices and Rules, Cablevision requests a pre-motion conference to seek leave to move, under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") for an order (i) compelling arbitration of all of the claims brought by plaintiff Christopher Krafczek, and (ii) staying all proceedings pending the outcome of arbitration.

Mr. Krafczek alleges that a change to Cablevision's billing practices that became effective October 10, 2016 violated the law because, in his view, Cablevision failed to provide adequate notice of the change. Compl. ¶ 21. He seeks to represent a putative nationwide class and New York subclass. *Id.* ¶ 34. Cablevision denies that Mr. Krafczek's claims have merit. But more significant, for present purposes, is that Mr. Krafczek agreed to resolve his disputes with Cablevision by arbitration on an individual basis when he signed up for Optimum telephone, cable, and Internet services. The FAA requires enforcement of that agreement.

In its motion, Cablevision will show that, when Mr. Krafczek restarted his Optimum service in December 2014, he was required to sign a Work Order form acknowledging that he read and agreed to the terms of the Work Order. And the reverse side of the Work Order in effect at that time (attached as Exhibit 1) prominently disclosed that he was accepting an arbitration provision. Specifically, the Work Order states, under the heading "General Terms and Conditions of Service," that "**YOUR USE OF THE SERVICE IS SUBJECT TO A BINDING ARBITRATION PROVISION THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICES. THIS PROVISION INCLUDES A WAIVER OF CLASS ACTIONS AND PROVISIONS FOR OPTING OUT OF ARBITRATION. A FULL COPY IS CONTAINED IN THE TERMS AND CONDITIONS OF SERVICE PROVIDED DURING TIME OF SERVICE APPOINTMENT AND AVAILABLE AT optimum.net/serviceinfo.**" Ex. 1 (boldface and capitalization in original).

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

The Honorable Joan M. Azrack
June 16, 2017
Page 2

The work order further includes the following statement: "**Arbitration:** Full copy available in the Terms of Service, available at optimum.net/serviceinfo." *Id.* (boldface in original).

A copy of the General Terms of Service as they appeared on Cablevision's website at that time is attached as Exhibit 2. The arbitration provision in those Terms covers "any and all disputes arising between You and Cablevision, or related to or arising from your relationship with Cablevision." Ex. 2 ¶ 18. It informs the customer that "YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND CABLEVISION EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND TO PARTICIPATE IN A CLASS ACTION." *Id.* (capitalization in original). It reiterates that class actions are not permitted: "YOU AGREE TO ARBITRATE YOUR DISPUTE ON A SOLELY INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED." *Id.* (capitalization in original). And it further allows customers to opt out of the arbitration provision without penalty by email or mail: "IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY CABLEVISION IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT." *Id.* (capitalization in original). Cablevision's records show that Mr. Krafczek did not opt out of this arbitration agreement.[1]

That arbitration agreement is fully enforceable under the FAA because Mr. Krafczek formed a binding contract when he signed the Work Order. Under well-established principles of New York law, the Work Order—which included multiple references to the arbitration provision in particular—incorporated the Optimum General Terms of Service. Indeed, Chief Judge Irizarry has held as much, ruling that an earlier version of Cablevision's work order incorporated by reference the complete Terms of Service located online, and thus the plaintiff was bound to those Terms. *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012); *see also Hammer v. Cablevision of Boston, Inc.*, 18 Misc. 3d 727, 729 (N.Y. Just. Ct. 2007) (holding that an earlier version of Cablevision's installation contract "incorporates by reference the 'Terms of Service' as posted on its Web site."). Although *Serrano* and *Hammer* did not involve arbitration, the same principles of contract formation apply here. As the Supreme Court recently confirmed, the FAA's mandate that courts "place arbitration agreements on equal footing with all other contracts" applies to questions of contract formation—*i.e.*, "whether such contracts are validly created in the first instance." *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1424, 1428 (2017) (quotation marks omitted).

Cablevision's records reflect that Mr. Krafczek disconnected his Optimum service in December 2016, and then reconnected his service on March 12, 2017—once again agreeing to the Optimum

---

[1] The motion will also show that Mr. Krafczek agreed to arbitration in other ways. For example, he was a Cablevision customer in October 2011, when Cablevision revised the Optimum Terms of Service to introduce an arbitration provision. Cablevision provided notice of the revision to its customers, including Mr. Krafczek, through a notice in their October 2011 billing statements and by posting the revised Terms on its website. Mr. Krafczek had thirty days after receipt of the mailing to opt out of arbitration; according to Cablevision's records, he did not do so.

The Honorable Joan M. Azrack
June 16, 2017
Page 3

Terms of Service. On March 27—just three days before filing this lawsuit on March 30—he opted out of the arbitration provision contained in his new agreement. We expect Mr. Krafczek to argue that the March 27, 2017 opt out allows him to avoid the arbitration of his disputes in this case. But that opt-out does not apply retroactively to invalidate Mr. Krafczek's preexisting arbitration agreements, which specifically cover the dispute in this case. His claims in this lawsuit arose in October 2016 or, at the latest, when he disconnected his Optimum service in December 2016—well before he opted out. And the opt out provision in the Optimum Terms in effect in March 2017 (*see* https://www.optimum.net/pages/terms/general.html) makes clear that Mr. Krafczek could not opt out of his past agreements: "**OPTING OUT OF THIS ARBITRATION PROVISION HAS NO EFFECT ON ANY OTHER OR FUTURE ARBITRATION AGREEMENTS THAT YOU MAY HAVE WITH ALTICE.**" (boldface and capitalization in original); *see also* Compl. ¶ 3 (acknowledging that Altice acquired Cablevision in June 2016). Indeed, were the rule otherwise, it would be trivially easy for plaintiffs to circumvent their arbitration agreements by cancelling a service, and then, right before filing suit, signing up for that service again and opting out of arbitration.

Mr. Krafczek also has no basis to challenge the enforceability of his arbitration agreement's terms. Any challenge to the fact that the Optimum arbitration provision prohibits class actions, for example, would be futile under binding Supreme Court precedent. The Supreme Court has held that any state-law rule "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "States," the Supreme Court added, "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons," such as the goal of ensuring that "small-dollar claims" do not "slip through the legal system." *Id.* at 351; *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it.").

Finally, when, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

For these reasons, and others to be set forth in its proposed motion, Cablevision requests permission from this Court to move to compel arbitration of plaintiff's claims and to stay all proceedings pending the outcome of arbitration.

Respectfully submitted,

/s/Archis A. Parasharami
*Counsel for Defendants*

CC (via ECF): All counsel of record