

June 23, 2017

**VIA ECF**
The Honorable Joan M. Azrack
United States District Court for the
  Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

      Re:    *Krafczek v. Cablevision Systems Corp., et al*
              Case No.: 2:17-cv-02915-JMA-SIL
              **Plaintiff's Response to Defendants' Pre-motion conference letter**
              **on proposed motion to compel arbitration**

Dear Judge Azrack:

      Plaintiff Christopher Krafczek writes in response to the June 16, 2017 letter submitted by Defendants Cablevision Systems Corporation ("Cablevision") and Neptune Holdings US Corporation d/b/a Altice USA ("Altice") (collectively, "Defendants") in which Defendants request a pre-motion conference regarding a proposed motion to compel arbitration and stay all proceedings. As shown below, because both Defendants fail to meet their burden of showing the existence of a binding agreement to arbitrate, a conference is unnecessary and Defendants should be denied the leave requested.

      Defendants provide cable, internet and telephone services under the Optimum brand name. (Compl. ¶ 2.) Mr. Krafczek enrolled with Cablevision in or around December 2014. (Compl. ¶ 14.) Defendants claim at that time, Mr. Krafczek "was required" to sign a Cablevision work order. (Def. Letter at 1.) Notably, Defendants did not attach a signed work order. Instead, they merely attached only the back page of a standard work order form allegedly in effect in December 2014. (*See* Exhibit 1 to Def. Letter.) Defendants did not provide any other documentation to support their claim that Mr. Krafczek signed—or even received—a work order. Also, while the back of the standard work order provides that customers would receive a copy of the terms and conditions of service at the time of the service appointment, Defendants fail to show that Mr. Krafczek received that document. Additionally, the back page of the standard work order does not include Altice as a party to the *potential* agreement—only "Cablevision" would be a party.

      In October 2016, Defendants changed their billing practices to make all consumer cancelations effective on the last day of their then-current billing cycle. (Compl. ¶ 5.) Also in October 2016, a new General Terms and Conditions of Service went into effect ("Altice Terms and Conditions") and replaced the prior General Terms and Conditions of Service ("Cablevision Terms and Conditions").[1] Among other things, the Altice Terms and Conditions included new

---

[1]   *See* https://www.optimum.net/pages/terms/general.html (last viewed on June 22, 2017).

One Tampa City Center  |  201 North Franklin Street  |  7th Floor  |  Tampa, FL 33602  |  Ph: 813.223.5505  |  www.ForThePeople.com

Atlanta, GA  |  Bowling Green, KY  |  Daytona Beach, FL  |  Fort Myers, FL  |  Jackson, MS  |  Jacksonville, FL  |  Kissimmee, FL  |  Lakeland, FL  |  Lexington, KY  |  Naples, FL  |  Nashville, TN
New York, NY  |  Memphis, TN  |  Orlando, FL  |  Plantation, FL  |  Sarasota, FL  |  St. Petersburg, FL  |  Tallahassee, FL  |  Tampa, FL  |  Tavares, FL  |  The Villages, FL  |  Winter Haven, FL

Hon. Joan M. Azrack
June 23, 2017
Page 2

terms for arbitration with Altice. Defendants do not even attempt to claim that Mr. Krafczek agreed to the terms of arbitration in the Altice Terms and Conditions.[2] Consistent with Mr. Krafczek's allegations relating to Defendants' deceptive billing practices, Defendants' changes to the general terms and conditions of service were similarly deceptive and also lacked the proper notice to consumers.

In December 2016, Mr. Krafczek cancelled his services with Defendants and returned his equipment, but Defendants nevertheless charged him for the remainder of his billing cycle. (Compl. ¶ 7.) Mr. Krafczek re-enrolled with Altice in March 2017, and within 30 days of re-enrolling he opted out of arbitration as set forth in the Altice Terms and Conditions. (*See* Def. Letter at 3.)

Against this backdrop, Cablevision and Altice both fail to show the existence of a binding agreement to arbitrate. Courts regularly deny motions to compel arbitration where a defendant fails to meet its burden of proving that the parties entered into an agreement to arbitrate. *See, e.g.*, *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 505 (E.D.N.Y. 2016) (denying motion to compel based on lack of mutual intent); *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 422 (S.D.N.Y. 2016) (same). In determining whether to compel arbitration, the first step of the analysis, which is at issue here, is whether the parties ever "agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). This is the "threshold question" in considering a motion to compel arbitration, *id.*, "because parties cannot be required to arbitrate when they have not agreed to," *Marcus v. Collins*, No. 16 CV 4221GBDBCM, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016) (internal quotations and citations omitted). "Arbitration is a matter of contract." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citation and quotation marks omitted). "[T]he law ... requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). Consequently, the party seeking to compel arbitration bears the burden of proving that a binding agreement to arbitrate was formed. *Dreyfuss v. eTelecare Global Solutions–U.S. Inc.*, 349 Fed.Appx. 551, 555 (2d Cir. 2009). If the party fails to "make a prima facie initial showing that an agreement to arbitrate existed," the motion to compel arbitration must be denied. *Hines v. Overstock.com. Inc.*, 380 Fed.Appx. 22, 24 (2d Cir.2010). "Under New York law, a party seeking arbitration must prove the existence of a valid arbitration agreement by a 'preponderance of the evidence.'" *Marcus*, No. 16 CV 4221GBDBCM, 2016 WL 8201629, at *8 (internal citations and quotations omitted). *See also Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256, 258 (E.D.N.Y. 2012).

Here, to support their argument that Mr. Krafczek formed a binding contract with Cablevision in 2014, Defendants rely solely on the unsigned back page of a sample work order. (*See* Def. Letter at Ex. 1.) This is entirely insufficient to meet the burden of showing that Mr. Krafczek formed an agreement to arbitrate with Cablevision and Altice. *See Marcus*, No. 16 CV

---

[2] *See, e.g..*, *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (denying motion to compel arbitration where plaintiff had no notice of the terms and conditions of use); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (same).



Hon. Joan M. Azrack
June 23, 2017
Page 3

4221GBDBCM, 2016 WL 8201629, at *8 (denying a motion to compel arbitration where "defendants have attempted to meet their burden through a complex chain of proof held together, at many crucial links, only by assumptions and inferences that are inconsistent with the underlying documents or by sweeping factual assertions"); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 693 (S.D.N.Y. 2015), *appeal withdrawn* (Oct. 5, 2015) (denying a motion to compel arbitration where defendants produced only sample agreements and finding that "[d]efendants' primary evidentiary deficiency on the motion," was their failure to produce "admissible and probative evidence" to establish existence of binding agreement to arbitrate); *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 371–72 (2d Cir. 2003) (affirming the denial of a motion to compel arbitration where "there is no valid contract signed by both parties").  Moreover, Defendants provide no explanation for how they could possibly cure this fatal defect in any subsequent briefing.  As such, a conference is unnecessary and Defendants should be denied leave to compel arbitration.

Even if Defendants had met their burden of establishing that Cablevision had a binding agreement with Mr. Krafczek in December 2014—which they have not—Defendants should nevertheless be denied leave to move to compel arbitration because Mr. Krafczek opted out of Altice's arbitration agreement.  Defendants argue that Mr. Krafczek's arbitration opt-out with Altice "does not apply retroactively to invalidate Mr. Krafczek's preexisting arbitration agreements" because the terms of the arbitration provide that opting-out "has no effect on any other or future arbitration agreements that you may have with *Altice*." (Def. Letter at 3 (emphasis added).)  The problem with this argument is that Mr. Krafczek has no "other" arbitration agreement with *Altice*.  Neither the back page of the 2014 Cablevision work order, nor the Cablevision General Terms and Conditions would require a party to that agreement to arbitrate claims with any entity other than Cablevision.³  While Altice owns Cablevision, they are distinct corporate entities.  Prior to March 2017, Altice failed to enter into a binding arbitration agreement with Mr. Krafczek.  As such, his arbitration opt-out suffices to prohibit Altice from compelling arbitration in this litigation.

In light of the above, a pre-motion conference is unnecessary.

Respectfully submitted,

*/s/ Marisa K. Glassman*
Counsel for Plaintiff

cc (via ECF): All counsel of record

---

³ For example, unlike in the Altice General Terms and Conditions, there is no language in the Cablevision General Terms and Conditions that Cablevision includes its "parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors."  In fact, the Cablevision General Terms and Conditions provide that "[i]f you have previously notified Cablevision of your decision to opt out of arbitration, you do not need to do so again." (*See* Def. Letter at Ex. 2 ¶18.)

