| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X<br>CHRISTOPHER KRAFCZEK, on behalf of<br>himself and all others similarly situated,<br><br>                  Plaintiffs,<br>    -against-<br><br>CABLEVISION SYSTEMS CORP. and<br>NEPTUNE HOLDINGS US CORP. d/b/a<br>ALTICE USA,<br><br>                  Defendants.<br>----------------------------------------------------------------X | For Online Publication Only<br><br><br><br><br><br>**MEMORANDUM & ORDER**<br>17-CV-2915 (JMA) (SIL)<br><br><br><br><br>**FILED**<br>**CLERK**<br>4/25/2018 4:55 pm<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE** |

**APPEARANCES:**

Marisa K. Glassman
John A. Yanchunis
Morgan & Morgan Complex Litigation Group
201 N. Franklin St., 7th Floor
Tampa, FL 33602
    *Attorneys for Plaintiff*

Archis A. Parasharami
Daniel E. Jones
Matthew D. Ingber
Mayer Brown LLP
1999 K Street, N.W.
Washington DC, 20006-1001
    *Attorneys for Defendants*

**AZRACK, United States District Judge:**

On March 30, 2017, Christopher Krafczek ("Plaintiff") filed this putative class action against Cablevision Systems Corporation ("Cablevision"), and its parent company Neptune Holdings US Corp. d/b/a Altice USA ("Altice") (together, "Defendants") in New York State court. Plaintiff's complaint alleges violations of New York General Business Law ("GBL") § 349 as well as a claim for unjust enrichment based on Defendants' allegedly deceptive billing practices. On May 12, 2017, Defendants removed this action to federal court and on November 21, 2017, filed

1

a motion to compel arbitration and to stay the litigation. For the reasons set forth below, Defendants' motion to compel arbitration and stay the litigation is GRANTED.

## I. BACKGROUND

Defendant Cablevision provides voice, television and internet services through its Optimum brand. (Riley Decl. ¶ 2, ECF No. 17-31.) Altice acquired Cablevision in June 2016 and currently provides the Optimum services to customers. (Id. ¶ 1-2.) Plaintiff first began receiving Optimum Voice, Television, and Internet services in February 2009. (Riley Decl. ¶ 4.) Plaintiff disconnected those services on December 10, 2012. (Id. ¶ 5.) Plaintiff and Defendants agree that Plaintiff re-enrolled in these Optimum services in December 2014. (See Christopher Krafczek Decl. ¶ 3, ECF No. 17-24; Riley Decl. ¶ 6.) Defendants' records show that a field services technician came to Plaintiff's address on December 14, 2014 for the purposes of installing the necessary equipment and activating the services that Plaintiff requested. (Riley Decl. ¶ 6.) Defendants' records indicate that at this appointment, Plaintiff or his authorized representative completed the necessary steps for installation, which included agreement to Optimum's General Terms and Conditions of Service (the "Terms"). (Riley Decl. ¶¶ 9-13.) Defendants have also produced a digital signature from their records, which they affirm is the signature provided by Plaintiff or his authorized representative when agreeing to the Terms. (Id., Ex. 3.) Neither Plaintiff, nor his wife, who both submitted declarations, recall whether they were home at the time of installation, whether they reviewed the Terms or whether they provided a signature indicating agreement to the Terms. (Christopher Krafczek Decl. ¶¶ 4-5, Michelle Krafczek Decl. ¶¶ 2-4.) At the time of installation, Optimum's Terms included an arbitration provision, which read,

> Except as noted below under "Excepted Claims," any and all disputes arising between You and Cablevision, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this

2

>Arbitration Provision.
>
>Resolving Your dispute with Cablevision through arbitration means You will have a fair hearing before a neutral arbitrator instead of in a court before a judge or jury. YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND CABLEVISION EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.

(Cheung Decl., Ex. 1 ¶ 18, ECF No. 17-2.)  The Terms also allowed subscribers to opt out of the arbitration provision within 30 days by either mail or email.  (Id.)  Plaintiff did not opt out of the arbitration provision within 30 days of activating his Optimum services in December 2014.  (Cheung Decl. ¶ 10.)

The parties agree that Plaintiff cancelled his Optimum services in December 2016 and that his claims in this suit arise from charges he incurred in connection with that cancellation.  (Christopher Krafczek Decl. ¶ 8; Riley Decl. ¶ 14.)  The parties also agree that Plaintiff re-enrolled with Optimum in March 2017 and opted-out of the arbitration clause in the Terms that same month.  (Christopher Krafczek Decl. ¶ 8; Cheung Decl. ¶ 11.)  The only issue on which the parties disagree is whether they entered into a valid and binding arbitration agreement in December 2014.

## II. DISCUSSION

**1. Legal Standard**

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate disputes arising out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress enacted the FAA to promote the enforcement of agreements to arbitrate and to support a "strong federal policy favoring arbitration as an alternative means of dispute resolution."  Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998); see also Mastrobuono v. Shearson

3

Lehman Hutton, Inc., 514 U.S. 52, 54 (1995). Reversing past "judicial hostility" toward arbitration agreements, the FAA helps parties use arbitration to avoid the costs and delays associated with litigation. Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (1987) (quoting Scherk v. Alberto–Culver Co., 417 U.S. 506, 510 (1974)). "[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [courts] have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (quoting Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995)) (internal quotation marks omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Chelsea Square Textiles, 189 F.3d at 294 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). However, the FAA does not require parties to arbitrate if they did not agree to do so. Collins & Aikman Products Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995).

To determine whether a particular dispute is arbitrable, the Court asks whether the parties agreed to arbitrate, and if so, whether the claim at issue falls within the scope of the agreement to arbitrate. Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281–82 (2d Cir. 2005), abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010).

Where a party moves to compel arbitration pursuant to the FAA, 9 U.S.C. § 4, the Court applies "a standard similar to that applied on a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). A trial is only necessary if there is a disputed issue of material fact concerning arbitrability. Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011); 9 U.S.C. § 4. In deciding the motion, the Court must "'consider all relevant, admissible evidence' and 'draw all reasonable

4

inferences in favor of the non-moving party.'" Biggs v. Midland Credit Mgmt., Inc., No. 17-CV-340, 2018 WL 1225539, at *3 (E.D.N.Y. Mar. 9, 2018) (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)).  However, where the undisputed facts in the record provide for resolution of the issue of arbitrability as a matter of law, the Court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" Wachovia Bank, 661 F.3d at 172 (quoting Bensadoun, 316 F.3d at 175).

Whether the parties agreed to arbitrate is determined by state law. Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract, . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law.")  The parties agree that New York state law applies in this case.

    2. **Application**

        *i.  A Valid Agreement to Arbitrate Exists*

Plaintiff first argues that Defendants have failed to meet their burden of demonstrating the existence of a valid and binding arbitration agreement between them.  Next, Plaintiff claims that even if such an agreement were formed in December 2014, that agreement was only between him and Cablevision, not Altice, and that when he resumed his cable services in March 2017, Plaintiff opted out of the arbitration clause that governed disputes between himself and Altice.

New York law requires that a party seeking arbitration "prove the existence of a valid arbitration agreement by a preponderance of the evidence." Couch v. AT & T Servs., Inc., No. 13-CV-2004, 2014 WL 7424093, at *3 (E.D.N.Y. Dec. 31, 2014) (citation and internal quotation marks omitted).  Defendants have satisfied their burden and have demonstrated that the parties entered into an agreement to arbitrate in December 2014.  Defendants submitted declarations detailing Optimum's business practice and the requirements for the installation of cable, internet,

and telephone services in December 2014. Defendants' evidence shows that every field technician who installed Optimum services in December 2014 was required to present the customer or an authorized representative with an iPad that contained the "complete text of the General Terms and Conditions of Service in a scrolling text box." (Riley Decl. ¶ 9.) As explained earlier, the Terms contained an arbitration provision that requires that all disputes between a subscriber and "Cablevision, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this Arbitration Provision." (Cheung Decl., Ex. 1 ¶ 18.) Defendants provided the Court with examples, taken from their records, which demonstrate how the Terms appeared at the time of installation. (Riley Decl., Ex. 2.) According to Defendants, in order to proceed past this screen and to complete installation, the subscriber had to click on a button reading "I Agree." (Riley Decl. ¶ 9.) On the next screen, the subscriber had to provide an email address and to check a box agreeing to receive certain notifications by email including a copy of the Terms. (Riley Decl., Ex. 2.) Defendants' records show that Plaintiff or his authorized representative provided a yahoo.com email address at this point in the installation process. (Riley Decl. ¶ 10.) This same screen informs the subscriber that the Terms are also available on Optimum's website and provides the web address. (Riley Decl., Ex. 2.) In order to progress past this screen, the subscriber is required to sign his or her name on the tablet underneath an acknowledgement that reads, "BY SIGNING BELOW, THE CUSTOMER ACCEPTS INSTALLATION/REPAIR OF OPTIMUM SERVICE, AGREES TO ALL THE INFORMATION ABOVE, AND ACCEPTS THE GENERAL TERMS AND CONDITION OF SERVICE." (Id. ¶ 11 & Ex. 2.) Once the installation process is completed on the iPad, a sales appointment receipt that includes the subscriber's signature is generated and emailed to the

subscriber at the email address he or she provided. (Riley Decl. ¶ 12.) Defendants' records show that Plaintiff or his authorized representative signed the iPad at the final stage of the installation process, indicating acceptance and agreement to all of the Terms. (Id.) In fact, Defendants maintained a copy of the digital signature provided on behalf of Plaintiff for its records and produced a copy of it as an exhibit to the Riley Declaration.[1] (Riley Decl., Ex. 3.) According to that declaration, a copy of the signed sales appointment receipt was sent to Plaintiff at the yahoo.com email address provided at the time of installation. (Riley Decl. ¶ 13.)

In his opposition, Plaintiff claims that Defendants have failed to meet their burden in demonstrating that a binding arbitration contract was formed, yet he provides no evidence contradicting the facts or evidence provided by Defendants. Instead, Plaintiff merely attempts to create ambiguities or doubt as to Defendants' version of the facts by suggesting alternate hypothetical scenarios. For instance, Plaintiff states in his opposition, "Defendants state that a field service technician presents an iPad to consumers, but it is not clear at what point a technician presents the iPad, if they remain in control of the iPad, which screens a consumer sees versus which screens a technician accesses, and whether a technician can complete any or all of the screens." (Opp. at 5.) While Plaintiff appears to be suggesting that the technician could have clicked on the "I Agree" button indicating agreement to the Terms or signed on Plaintiff's behalf without his knowledge, Plaintiff does not go so far as to actually claim that such events occurred or that Defendants fabricated these records. He certainly does not provide any evidence supporting such a theory.

In fact, Plaintiff does not even affirmatively dispute that either he or his wife reviewed the Terms at the time of installation and signed the iPad indicating agreement to those terms. Instead,

---

[1] The first name represented in the digital signature Defendants produced very clearly appears to be "Michelle," the name of Plaintiff's wife. As explained infra, Plaintiff's wife does not dispute the authenticity of this signature.

7

their declarations merely state that they do not recall being home at the time of the appointment. (Christopher Krafczek Decl." ¶ 4; Michelle Krafczek Decl. ¶ 2.) Nor do they recall, "being presented with any of the enrollment screens or Terms and Conditions of Service that Optimum has produced." (Christopher Krafczek Decl. ¶ 5, Michelle Krafczek Decl. ¶ 3.) Plaintiff's wife states in her declaration that she does "not recall signing or being asked to sign any documents either electronically or in paper form for Optimum." (Michelle Krafczek Decl. ¶ 4.) However, Plaintiff's declaration does not even address whether he remembers signing any documentation, electronic or otherwise, at the time his Optimum services were installed.

Despite Plaintiff's arguments to the contrary, "[a] mere lack of recollection of signing an agreement . . . is insufficient on its own to defeat a finding that the contract existed." Savarese v. J.P. Morgan Chase, No. 16-CV-321, 2016 WL 7167968, at *5 (E.D.N.Y. Nov. 16, 2016), report and recommendation adopted, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016); Gonder v. Dollar Tree Stores, Inc., 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) ("A mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated.") (citing Vardanyan v. Close-Up Int'l, Inc, 315 F. App'x 315, 317 (2d Cir. 2009)).

Here, Plaintiff makes no claims that Defendants' records are fabricated or that the signature Defendants provided is forged and therefore cannot argue that he has put forth evidence demonstrating a material dispute of fact. See Savarese, 2016 WL 7167968 at *5 ("As Savarese does not contend that the agreement was fabricated, but only that he does not remember signing it, this challenge to the validity of the Arbitration Agreement fails as a matter of law."); see also Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017) ("failing memories do

8

not absolve a party from its contractual obligations, or create a triable issue of fact") (internal citation omitted).

Defendants' records indicate that the Terms, which included the arbitration clause, were displayed to Plaintiff at the time of installation, that Plaintiff or his representative clicked "I agree," indicating assent to the Terms, and that Plaintiff or his representative provided a digital signature, which also indicated agreement to the Terms. This is sufficient evidence to satisfy Defendants' burden that an agreement to arbitrate was entered into by the parties in December 2014. The fact that Defendants cannot produce a hardcopy version of a signed agreement "specific to [Plaintiff]" (Opp. at 17), is immaterial. Courts regularly recognize the validity of clickwrap agreements such as the one in this case. See, e.g., Meyer v. Uber Techs., Inc., 868 F.3d 66, 75 (2d Cir. 2017) ("Courts around the country have recognized that an electronic click can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.") (internal quotation marks omitted) (quoting Sgouros v. TransUnion Corp., 817 F.3d 1029, 1033–34 (7th Cir. 2016)). On the other hand, Plaintiff has provided no evidence at all and therefore has failed to raise a material issue of fact as to the existence of the agreement to arbitrate.

Plaintiff's remaining arguments are similarly unavailing. To the extent Plaintiff argues that there is doubt as to which version of the Terms were in effect at the time he contracted with Defendants, he misrepresents the record. Plaintiff's argument is based on the fact that Defendants mistakenly attached the wrong version of the Terms to their June 16, 2017 pre-motion letter and attached the proper version to the declaration in support of the instant motion. As Defendants correctly point out, it is clear from the face of each of these documents which version was in effect

9

in December 2014. The version of the Terms attached to Defendants' pre-motion letter states that the Terms were "Effective June 11, 2014" and indicated that changes were forthcoming, as there was a link at the top of the page which read, "*Click here to see the changes to the General Terms and Conditions of Service Effective July 11, 2014.*" (ECF No. 9-2, at 1, 7.) The version of the Terms submitted with Defendants' motion clearly states that they were "Effective July 11, 2014" and Defendants submitted a declaration affirming that these were the Terms in effect in December 2014. (Cheung Decl. ¶ 3 and Ex. 1 at 1.) Defendants' mistake in attaching the wrong version to their pre-motion letter, albeit careless, does not create any factual ambiguity nor does it mean that Defendants are bound by their earlier submission.

ii. *Plaintiff's March 2017 Opt-Out Does Not Apply Retroactively*

Plaintiff also argues that his opt-out of the arbitration clause upon resuming his Optimum service in March 2017 should retroactively invalidate the agreement he entered into in December 2014. Plaintiff claims that the December 2014 agreement was only between Plaintiff and Cablevision and not between Plaintiff and Altice. He claims that the only agreement he entered into with Altice was in March 2017 and that he opted out of the arbitration provision included in that agreement. Plaintiff's argument is wholly unconvincing as he bases his entire argument on the premise that the first set of Terms Defendants mistakenly submitted to the Court, unlike the version attached to their motion, does not include language stating that Plaintiff is obligated to arbitrate disputes between himself and Cablevision's "parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors." As explained earlier, there is no genuine dispute as to which Terms were in effect at the time of Plaintiff's December 2014 enrollment. The applicable version of the Terms state, "any and all disputes arising between You and Cablevision, including its respective parents, subsidiaries, affiliates, officers, directors,

10

employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this Arbitration Provision." (Cheung Decl., Ex. 1 ¶ 18.)

Plaintiff appears not to dispute that when such language is used, the arbitration provision would encompass Altice, as the parent corporation of Cablevision, and require that all non-exempt disputes between them be resolved through arbitration. (See Opp. at 18.) Indeed, other than noting the contradiction between the two versions of the Terms, Plaintiff provides no additional support for his position. Accordingly, I conclude that Plaintiff's decision to opt-out of the March 2017 arbitration provision has no effect on the agreement to arbitrate entered into in December 2014.

### iii. Plaintiff's Request for Discovery is Denied

Plaintiff also requests, "to the extent the Court finds that there is an issue of material fact regarding the making of an agreement to arbitrate," that he be granted the opportunity to conduct discovery on that issue. (Opp. at 19.) Plaintiff requests a corporate representative deposition, the deposition of the service technician who installed his Optimum services in December 2014 and the depositions of each of Defendants' employees who submitted declarations in support of Defendants' motion. As explained above, the Court finds that there is no issue of material fact regarding the making of an agreement to arbitrate and that Defendants' have satisfied their burden that such an agreement exists. Accordingly, Plaintiff's request for discovery on that issue is denied.

### iv. This Action is Stayed

The FAA requires that when all claims have been referred to arbitration and a stay is requested by one of the parties, the Court must stay all proceedings pending arbitration. 9 U.S.C. § 3; see also Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). Accordingly, Defendants' request to stay this action is granted.

### III.     CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration on an individual basis is GRANTED.  Plaintiff's class action claims are DISMISSED and this action is stayed pending arbitration of Plaintiff's claims.  The parties are directed to inform the Court of any resolution of the arbitration proceedings or any other event that would affect the stay of this matter.

**SO ORDERED.**

Dated: April 25, 2018
          Central Islip, New York

                                                       /s/  (JMA)
                                                JOAN M. AZRACK
                                                UNITED STATES DISTRICT JUDGE